IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Hanford-Southport, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| CITY OF SAN ANTONIO, PATRICK | § | CIVIL ACTION NO. |
| O'CONNOR, in His Official and Individual | § | SA-11-CA-1007-FB |
| capacities, SAN ANTONIO WATER | § | |
| SYSTEM, BRICE MOCZYGEMBA, P.E., | § | |
| PAPE-DAWSON ENGINEERS, INC., and | § | |
| PIPELAYERS, INC., | § | |
| | § | |
| Defendants. | § | |

<u>SECOND AMENDED ORIGINAL COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Plaintiff, HANFORD-SOUTHPORT, LLC, a California limited liability corporation, and files this second amended original complaint complaining of the CITY OF SAN ANTONIO, TEXAS, and PATRICK O'CONNOR, in his Official and Individual capacities, SAN ANTONIO WATER SYSTEM, BRICE MOCZYGEMBA, P.E., PAPE DAWSON ENGINEERS, INC., and PIPELAYERS, INC., Defendants, and in support thereof would show the Court as follows:

## I.  PARTIES

1.1  Plaintiff Hanford-Southport, LLC, a California limited liability corporation, ("Hanford-Southport") is the owner of the property at issue in this case.

1.2  Defendant City of San Antonio, ("COSA"), is a Texas municipal corporation and home rule city pursuant to the Constitution and laws of the State of Texas.

1

1.3   Defendant Patrick O'Connor ("O'Connor") is the Project Manager for SAWS Medina River Sewer Outfall Project ("MRSO"), and he was the SAWS official, who submitted the Tree Affidavit/Permit Application, which is the subject matter of this case.

1.4   Defendant San Antonio Water System ("SAWS") is a wholly owned utility of the City of San Antonio.

1.5   Defendant Brice Moczygemba, P.E., ("Moczygemba") is a Senior Vice-President of Pape-Dawson Engineers, Inc., and he is a resident of Bexar County, Texas.

1.6   Defendant Pape-Dawson Engineers, Inc., ("Pape-Dawson"), is a Texas corporation and a resident of Bexar County, Texas.

1.7   Defendant Pipelayers, Inc., ("Pipelayers"), is a Texas corporation and a resident of Bexar County, Texas.

## II. JURISDICTION AND VENUE

2.1    Jurisdiction of this Court is invoked under 28 U.S.C., Sections 1331 and 1343 in order to secure relief authorized by 42 U.S.C., Sections 1983 and 1988 pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Fourth and Fourteenth Amendments to the Constitution of the United States.

2.2    Jurisdiction of this Court is also invoked under the Texas Civil Practice and Remedies Code, Chapter 37 Declaratory Judgments; and TEX. CIV. PRAC. & REM. CODE §§101, et seq. Section 101.021(1) of the Texas Tort Claims Act.

2.3    Plaintiff also invokes the jurisdiction of this Court to decide issues relating to principles of equity and common law as applied to the facts of this case.

2.4.    Plaintiff submits that it has fulfilled all notice requirements for filing suit. Plaintiff filed a Notice of Claim to the Mayor and City Attorney of the City of San Antonio, Texas on April 14,

2011. (At true and correct copy of Plaintiff's Notice of Claim is attached hereto as Exhibit "A" for all purposes).

2.5     Plaintiff avers that venue for this case is proper in Bexar County, Texas.

### III.  FACTS

3.1     At the time of the incident made the basis of this lawsuit, Plaintiff "Hanford-Southport" was the owner of a 306 acre tract of real property known as "Southport" located on Applewhite Road south of the intersection of Lone Star Pass, across from the Toyota factory, San Antonio, Bexar County, Texas.

3.2     On or about October 2, 2009, Defendant Patrick O'Connor submitted a Tree Affidavit/Permit Application to the City of San Antonio, Development Services Department pursuant to the City Tree Preservation Ordinance No. 2006-11-02-1258, ("2006 Tree Ordinance"). O'Connor identified himself as contact person for San Antonio Water System. He also identified the Medina River Sewer Outfall ("MRSO") as the project name, which he stated was located in southwest Bexar County outside the City limits.

3.3     O'Connor submitted the Tree Affidavit/Permit Application as agent/owner. He also checked a box on the Tree Affidavit/Permit Application form, which indicated that no public funds would be used for the project. A true and correct copy of the Tree Affidavit/Permit Application, dated October 2, 2009, for the MRSO project, A/P No. 1589181, is attached hereto as Exhibit "B" and incorporated herein for all purposes.

3.4     Hanford-Southport alleges and would prove that the 2006 Tree Ordinance purportedly authorized O'Connor and SAWS to submit a Tree Affidavit/Permit Application seeking a permit to remove protected trees from the then-proposed MRSO project easement to be located on approximately 85 tracts of land without notice to all affected persons, who had interests in those

tracts of land. As a proximate result of the fact that O'Connor submitted the Tree Affidavit/Permit Application as agent/owner, none of the affected landowners were notified.

3.5     Furthermore, none of the affected landowners, whose protected trees were the subject of the Tree Affidavit/Permit Application for the MRSO project, were afforded an opportunity to dispute the permit application in an adversary proceeding subject to judicial review and approval. To wit, the 2006 Tree Ordinance authorized the City Arborist to make a final decision granting or denying a Tree Affidavit/Permit Application, subject to administrative appeal by the applicant. A true and correct copy of the City Tree Preservation Ordinance No. 2006-11-02-1258 is attached hereto as Exhibit "C" and incorporated herein for all purposes.

3.6     Hanford-Southport alleges and would prove that affected landowners, whose real property including the subject property was affected by the granting of the MRSO Tree Permit, were denied notice and an opportunity to participate in an adversary judicial forum to prevent warrantless seizure of real property or damage to their real estate without adequate compensation.

3.7     O'Connor stated under oath that the MRSO project address/location was outside the city limits, although 14.42 acres of the proposed sewer pipeline easement was planned to be located on Hanford-Southport's land, which is wholly located inside the city limits of the City of San Antonio, Texas.

3.8     Additionally, O'Connor stated under oath that no public funds would be used, when it was anticipated that construction of the proposed sewer pipeline project would use more than $100,000,000 of public funds.

3.9     Hanford-Southport alleges and would prove that each of the false statements sworn to by O'Connor related to material facts contained in the Tree Affidavit/Permit Application form.

3.10    Hanford-Southport alleges and would prove that the Tree Affidavit/Permit Application

4

form was completed by Defendants Moczygemba, P.E., who was the MRSO Project Engineer, and Pape-Dawson, who were negligent or grossly negligent in providing false and misleading statements of material facts contained in the Affidavit, when they submitted it to O'Connor for his review and signature before a notary.

3.11    As a proximate result of these misleading statements at the time of the original permit application in October, 2009, Hanford-Southport, which was the sole owner of the subject property, did not have notice or an opportunity to participate in the tree permit application process, which directly affected its property rights and interests including the rights to preserve investment-backed expectations, maintain its tree preserve, and remove or transplant surplus marketable trees.

3.12    Hanford-Southport alleges and would prove that if it had been given notice and an opportunity it would have provided evidence that O'Connor was not the owner of the property and was not an agent of the owner. Furthermore, Hanford-Southport would have shown that it was a necessary party to the permit application, and that it was opposed to the application. Hanford-Southport would have controverted the false and misleading statements of material facts in the Tree Affidavit/Permit Application and provided omitted information to show that the tree permit application should not have been granted under the facts and circumstances.

3.13    Additionally, as a proximate result of O'Connor's false and misleading statements, the SAWS MRSO tree permit application was not reviewed by city departments other than the City Arborist, when it should have been reviewed by city council staff for City Council Districts 3 & 4 and the historic design and review commission.

3.14    Nevertheless, the City Arborist arbitrarily and capriciously granted the application for a tree permit for the Medina River Sewer Outfall project and assigned A/P# 1589181 under the 2006 Tree Ordinance. Hanford-Southport alleges and would prove that this tree permit is invalid as to the subject property because O'Connor was not the owner of the affected real estate or agent of the landowners and did not have lawful authority to apply for and receive a tree removal permit as the agent/owner without notice to the owners of interests in the subject property and an opportunity to dispute the permit application in an adversary judicial forum.

3.15    Furthermore, Hanford-Southport submits that the permit application contained false and misleading statements of material fact, which prevented adequate review and precluded the valid granting of the tree permit application according to the 2006 Tree Ordinance. Hanford-Southport submits that all persons, whose interests in land were affected by the MRSO tree permit application, should have been notified and afforded an opportunity to participate in the permitting process and dispute false statements contained in the Tree Affidavit/Permit Application in an adversary judicial forum. Therefore, Hanford-Southport alleges and would prove that the granting or issuing of the tree removal permit by the City Arborist to O'Connor and SAWS was arbitrary and capricious, under the course of conduct and facts and circumstances of this case.

3.16    A year later, on August 6, 2010, O'Connor submitted an Administrative Exception/Variance Request Application for the MRSO project regarding A/P# 1589181 as the Owner. The Administrative Exception/Variance Request Application form states that an Owner's Agent must file a notarized Letter of Agent. Hanford-Southport alleges and would prove that O'Connor could not show that he was its agent or an agent of any of the affected landowners, but

by submitting the Administrative Exception/Variance Request Application as Owner, O'Connor effectively excluded from the process all persons, whose real property interests were affected by the MRSO Tree Permit and Variance. A true and correct copy of the Administrative Exception/Variance Request Application for the Medina River Sewer Outfall project regarding A/P# 1589181, dated August 6, 2010, is attached hereto as Exhibit "D" and incorporated herein for all purposes.

3.17    Furthermore, the MRSO Tree Permit Application form was submitted without all required information. To wit, it omitted additional requested information including City Council District, Ferguson Map Grid, Zoning District and San Antonio City Limits. Hanford-Southport submits that the MRSO tree permit affected land in City Council Districts 3 & 4, and the subject property is in City Council District No. 4, within the San Antonio City Limits.

3.18    Hanford-Southport alleges and would prove that false and misleading statements and omissions of material facts on the Administrative Exception/Variance Request Application form avoided adequate review of the application. To wit, the variance application was not adequately considered by the City Arborist and did not come to the attention of the owner of the subject property, the owners of other tracts of land affected by the MRSO Tree Permit/Variance, the City Forester, District 3 & 4 City Councilmen, or the City Historic Preservation Officer until after it was granted. Furthermore, as stated above, O'Connor, SAWS, and COSA were not owners of all real property interests affected by the MRSO Tree Permit & Variance in October 2009 and August 2010, and excluding of persons, whose real property interests were affected by the MRSO Tree Permit & Variance, infringed their rights, privileges and immunity secured by the fourth and fourteenth amendments.

3.19    Hanford-Southport was the sole owner of the subject property at all times relevant to

O'Connor's October 2009 and August 2010 applications for permission to permanently remove substantially all protected trees from within the easement area on the subject property. However, Hanford-Southport did not receive notice and was not afforded an adversary forum to participate in the permit/variance process and dispute the legality and propriety of granting a variance to remove protected trees on its property. Additionally, Hanford-Southport submits that the granting of the variance depended on the existence of a valid tree permit, and the tree permit, which was granted under the 2006 City Tree Preservation Ordinance, was invalid for the reasons stated above. So, the variance application was also invalid because the underlying permit was invalid.

3.20     The Variance Application identified Brice Moczygemba, P. E. of Pape-Dawson Engineers, Inc. as the consultant for O'Connor and SAWS. O'Connor attached to the Variance Application an Administrative Exception/Variance Request Review letter, dated August 13, 2010, from Pape-Dawson Engineers, Inc., signed by Senior Vice-President Brice Moczygemba, P.E., to the City of San Antonio. Mr. Moczygemba is the Project Engineer for the SAWS MRSO project. The letter was addressed to Mark Bird, City Arborist, City of San Antonio Development Services Department.  The letter began: "Kindly consider this letter as a formal request for an Administrative Variance from Section 35-523 "Tree Preservation" of the Unified Development Code."

3.21     Hanford-Southport alleges and would prove that the August 13, 2010 Administrative Exception/Variance Request Review letter contained materially misleading statements by Moczygemba and Pape-Dawson Engineers, Inc. To wit, the letter stated: "Planting of new trees within the easement area would not be practical because a majority of the alignment is located within rural areas with no access to irrigation water for maintaining the planted trees." When read together with the false statement in the Tree Affidavit/Permit Application that the proposed

8

project was outside the city limits, Moczygemba's statement implied that the project was outside the city limits. The statement also falsely implies that there is no access to irrigation water, when Moczygemba knew that 90-95% of the protected trees within the 32 mile long easement that are affected by the project were within the city limits and were close to the Applewhite Road water mains. In fact, there are potable water and reuse water mains where the sewer pipeline easement crosses the Applewhite Road right-of-way. Therefore, the implication that there was no irrigation water for maintaining trees planted in the 14.42 acre easement across Hanford-Southport's property was false and misleading.

3.22     On or about August 5, 2010, the City Arborist granted the tree permit variance on the basis of materially false and misleading statements of facts by the applicant and its agents allowing the permanent removal of all but one protected heritage tree out of more than 500 protected heritage trees on Hanford-Southport's property. Therefore, Hanford-Southport alleges and would prove that the granting of the Administrative Variance allowing removal of substantially all protected trees within the proposed easement area across its property was arbitrary and capricious.

3.23     Hanford-Southport alleges and would show that although it was a necessary party, it did not have notice of the Tree Affidavit/Permit Application and Administrative Exception/Variance Request Review letter that were submitted by O'Connor as agent/owner for the purpose of obtaining official permission under "color of authority" of state law to remove more than 500 protected heritage trees and other protected trees and understory plants valued at $3,559,370 from its property. Furthermore, Hanford-Southport was deprived of its right to dispute the granting of the tree removal permit and variance that purportedly authorized construction activities that materially affected its property and associated property rights and

interests.

3.24      Hanford-Southport alleges and would prove that if it was given notice and afforded

and opportunity to dispute the Tree Permit/Variance applications, it would have shown that it

was not necessary to permanently remove substantially all trees from within the then-proposed

easement area on the subject property. To wit, there were many ways it would have shown to

avoid or mitigate removal of protected historic, heritage and significant trees on the subject

property as discussed below.

3.25      Hanford-Southport alleges and would prove that at the time of the Tree

Affidavit/Permit Application on or about October 2, 2009, the City of San Antonio had not yet

authorized any land acquisition including an easement on the subject property for the proposed

MRSO pipeline project. Therefore, at minimum, the 2006 City Tree Ordinance should have

required Defendants O'Connor, SAWS and COSA to give notice and afford an adversary

proceeding to Hanford-Southport and other affected landowners regarding the Tree

Permit/Variance applications under fourth and fourteenth amendments.

3.26      Additionally and alternatively, even if Defendants waited until COSA and SAWS

acquired property rights to an easement on the subject tract before submitting the MRSO project

Tree Permit/Variance request, the fourth amendment still would have required them to afford an

opportunity to participate in an adversary judicial forum to all persons, whose interests in real

property were affected by the tree permit/variance. COSA and SAWS did not acquire any

property rights for the proposed sewer pipeline easement across the subject property until after

the adoption of the May, 2010 City Tree Ordinance No. 2010-05-06-0376, ("2010 Tree

Ordinance"), which increased tree mitigation requirements and mandated that SAWS shall

maximize tree preservation. A true and correct copy of the May, 2010 City Tree Ordinance No.

2010-05-06-0376 is attached hereto and incorporated herein for all purposes as Exhibit "E".

3.27     At the time of the Administrative Exception/Variance Request Application on August 6, 2010, the City of San Antonio, acting by and through SAWS, had not acquired any property rights for the MRSO sewer pipeline project easement across the subject property. Therefore, Hanford-Southport alleges and would prove that O'Connor lacked legal authority to request a variance as the owner of the subject property or owner's agent, and the Hanford-Southport did not waive its rights. Furthermore, Hanford-Southport alleges and would prove that the granting or issuing of the tree removal permit and variance affecting the subject property was arbitrary and capricious because the permit and variance were granted on the basis of materially false and misleading facts and evidence regarding tree removal mitigation factors under the 2006 Tree Ordinance. Additional evidence including ways to avoid or mitigate tree removal could have been offered by affected landowners but lack of notice precluded their participation in the administrative process and judicial appeal.

3.28     Hanford-Southport alleges and would prove that it is not necessary to permanently remove all trees from the pipeline easement. The 2006 Tree Ordinance required the MRSO project to satisfy <u>minimum</u> tree preservation mitigation standards. However, the City Tree Ordinance, as amended in May 2010, requires SAWS to <u>maximize</u> tree preservation by either avoiding removal or destruction of protected trees or restoration of the site after construction of the pipeline. Hanford-Southport submits that permanent removal of all trees from within the easement area appears to be in violation of either the 2006 or 2010 Tree Ordinance.

3.29     Hanford-Southport alleges and would prove that O'Connor's and SAWS' applications for the MRSO Tree Permit and variance did not meet either the requirements of the 2006 Tree Ordinance or the express requirements of the 2010 Tree Ordinance. Furthermore, Hanford-

Southport submits that 20,000 s.f. of protected woodlands valued at $145,000 already have been seized and destroyed by Defendant Pipelayers "under color of authority" of the MRSO Tree Permit, without a warrant or court order, notwithstanding the judgment in condemnation in Cause No. 2010-ED-0008, Bexar County Probate Court No. 2.

3.30    Hanford-Southport submits that both the 2006 & 2010 Tree Ordinances are unconstitutional as applied to the facts and circumstances of this case because both ordinances allow O'Connor or any other city project manager to apply for a Tree Permit/Variance as agent/owner without notice to affected landowners and other persons, whose interests in real property are affected by a Tree Permit/Variance. Therefore, affected persons have been and will continue to be denied federally protected rights, privileges and immunity as the Tree Preservation Ordinance is applied, under the facts and circumstances of this case, because they have been and will be denied procedural and substantive due process under the fourteenth amendment and subjected to unlawful warrantless seizure of real property interests without adequate compensation under the fourth amendment.

3.31    SAWS' application for a variance failed to show that the variance would not be contrary to the public interest. Hanford-Southport alleges and would prove that that the variance is contrary to the public interest because it allows the permanent removal and destruction of more than 500 heritage trees without necessity.

3.32    SAWS' application for a variance failed to show that the variance would be in harmony with the spirit and purpose of the tree ordinance.  Hanford-Southport alleges and would prove that the variance allows the unnecessary removal of 10.4 acres of protected woodlands including 5.9 acres of the proposed tree preserve for the property.

3.33    SAWS' application for a variance failed to demonstrate that the variance would not

substantially weaken the general purposes of the tree ordinance or the regulations established for the protection of trees.  Hanford-Southport alleges and would prove that allowing SAWS to remove hundreds of heritage trees without necessity creates a double standard because non-governmental developers are not allowed to remove heritage trees without necessity.

3.34     Finally, SAWS' application for a variance failed to demonstrate that the variance granted would be limited in scope of relief to only that which is necessary to relieve the hardship condition. Hanford-Southport alleges and would prove that SAWS has not demonstrated a substantial hardship because the cost of restoring the easement by replanting the heritage trees that can be removed without damaging them would cost only about 2-3% of the $100+ million budget for the entire construction project.

3.35     Contrary to SAWS project engineer's letter supporting the variance application, irrigation water is available for watering newly planted trees within the easement area on the subject property. Furthermore, Hanford-Southport alleges and would prove that trees are allowed to grow for decades on other SAWS sewer pipeline easements without interfering with operation and maintenance.

3.36     Hanford-Southport alleges and would prove that site restoration is technically and financially feasible, and the cost of restoring the easement site including re-planting historic and heritage trees on the subject property after temporary removal and care during construction would be $2.5 million according to admissible expert testimony.

3.37     Hanford-Southport alleges and would prove that another alternative construction procedure that would avoid disturbing or destroying most of the historic heritage trees within the easement area would be to re-align the pipeline around sensitive areas of historic trees or to bore or tunnel underneath the woodlands and install sections of pipeline without excavating an open

trench. Boring or tunneling is an expressly approved method of avoiding unnecessary tree removal under the City tree preservation ordinance, as amended in May 2010.

3.38    Hanford-Southport alleges and would prove that the cost of re-aligning the pipeline or installing sections of pipeline by boring or tunneling, which would avoid most of the site restoration cost, would be reasonably equivalent in cost to installing the pipeline by the open trench method and restoring the surface to its pre-construction condition.  However, Hanford-Southport submits that boring or tunneling would be a far superior alternative to tree removal and site restoration because that method of avoiding land clearing would leave the site undisturbed and avoid the cost of restoring the site to its present historical condition, which would be much more expensive if transplanting all trees and understory plants were required.

3.39    Sworn testimony by engineering experts including SAWS' project engineer shows that restoration of the woodlands within the easement area on the subject property would not necessarily interfere with operation and maintenance of the pipeline because the varieties of trees on the easement do not have deep roots, the pipeline will be buried about 30-50 feet deep, and it is not reasonably foreseeable that the pipeline will ever need to be dug up for any purpose.

3.40    Furthermore, the judgment granting the pipeline easement subsequently acquired by condemnation on October 12, 2010 authorized the permanent removal of trees within the easement area on the subject property and unnecessary damage or destruction of significant, historic or heritage trees without adequate compensation, but such authorization conflicts with the 2010 City Tree Ordinance, which requires a valid tree removal permit and mandates that SAWS shall maximize tree preservation.

3.41    At the special commissioners hearing in condemnation in Cause No. 2010-ED-0008 Defendants COSA and SAWS denied any legal obligation to provide adequate compensation for

14

the removal of significant, heritage, historic or marketable trees from within the easement area, and they prevented any evidence from being introduced to show the value of the trees and understory plants within the easement area.

3.42      On appeal, the trial court likewise did not award damages either for the reduction in land value caused by tree removal or for the intrinsic value of trees to be removed by the City or SAWS. Nevertheless, the City and SAWS presented evidence and argument that the landowner could restore the pipeline easement to its prior wooded condition at the owner's own risk and expense. Hanford-Southport alleges and would prove that site restoration would cost $2.5 million for professional removal, preservation and transplanting of 500 heritage and historic trees back onto the easement area after completion of construction activities. Transplanting the existing historic and heritage trees is necessary because the quantities, age and size of such varieties of trees and understory plants are not readily available for purchase at local tree nurseries.

3.43      Therefore, Hanford-Southport claims rights, privileges and immunity under the fourth and fourteenth amendments to protect its interests in real property, and COSA and SAWS have a duty not to damage or destroy significant, heritage or historic trees within the MRSO project easement area under the 2010 Tree Ordinance, which mandates that SAWS shall maximize tree preservation. Furthermore, COSA and SAWS have a duty to avoid damaging or destroying protected trees and understory plants within the easement area on Hanford-Southport's property because these trees have significant value to the owner of the property; it is necessary to transplant the same trees back onto the easement in order to restore the site after construction; and COSA and SAWS adamantly refused to compensate the landowner for any loss, damage or destruction of trees, when the easement on the subject property was condemned, even though permanent tree removal is not necessary.

3.44    Hanford-Southport alleges and would prove that it is technically and financially feasible within the approved MRSO project budget to avoid damaging or destroying the protected trees and understory plants within the easement area pursuant to the 2010 Tree Ordinance.  Therefore, Hanford-Southport submits that it would be both unlawful and inequitable to allow the City or SAWS to destroy valuable, marketable trees and understory plants within the easement area under the facts and circumstances of this case.

3.45    Hanford-Southport alleges and would prove that because O'Connor applied for the tree permit/variance as the "Owner" and COSA and SAWS denied it notice and an opportunity to participate in the administrative permit/variance process even though it was the sole owner of the property, there was no administrative or judicial procedure for Hanford-Southport to appeal the decision of the City Arborist. That is because the decisions of the City Arborist granting a tree removal permit or variance were final unless timely appealed by the applicant, and O'Connor submitted the applications as agent/owner.

3.46    Therefore, Hanford-Southport submits that its claims for denial of both procedural and substantive due process are ripe for judicial determination by a federal court. Hanford-Southport also submits that its claims for warrantless seizure of real property without adequate compensation under the fourth amendment is ripe for judicial determination by a federal court.

3.47    Hanford-Southport alleges and would prove that at the time the tree permit and variance were granted it had an investment-backed interest in commercial development of the subject property according to a previously approved master development plan and master tree preservation plan.

3.48    Hanford-Southport alleges and would prove that the replacement cost for the protected trees and understory plants that COSA has given SAWS permission to permanently

remove under "color of authority of state law" is estimated to be $3,559,370.  This estimate of value is based on the wholesale prices of local commercially available replacement trees and understory plants in the sizes and quantities and varieties existing on the 14.42 acre easement across the subject property.

3.49    Hanford-Southport intended to utilize the 5.9 acres of existing landscape trees within the easement area as permanent landscape improvements in the areas designated as sites for a future hotel and conference center and office park according to a previously approved Master Development Plan and Master Tree Plan.

3.50    Hanford-Southport alleges and would prove that 5.9 acres of woodlands in the part of its on-site tree preserve within the easement area have an enhancement value of $2,483,097 including trees and understory plants.

3.51    This 5.9 acres tree preserve is located adjacent to the archeological preserve within the Medina River Park and natural area and historic Walsh Cemetery, which makes this tree preserve historically significant because it has existed throughout the 200 year history of the Perez Rancho.

3.52    Hanford-Southport intended to utilize the remaining 4.5 acres of surplus trees and understory plants within the 14.42 acre easement as native landscape trees and understory plants for sale or use elsewhere on the property. The trees that the owner has designated as surplus are not as old or historically significant as the woodlands that it planned to preserve as the on-site tree preserve. Nevertheless, the 4.5 acres of surplus trees have substantial intrinsic value and they are marketable as landscape plants.

3.53    There are 257,497 square feet or 5.9 acres of landscape trees and 195,686 square feet

or 4.5 acres of surplus marketable trees within the 14.42 acre sewer pipeline easement area.

3.54    The subject property has great historical significance, which was recognized by the Texas Historical Commission, when it designated the entire tract as a State Archeological Landmark.

3.55    The Agreement Concerning the State Archeological Landmark Designation of Rancho Perez was recorded on October 4, 2005 as Document No. 20050229075 in the Official Public Records of Bexar County, Texas.

3.56    The subject property was part of the homestead of Col. Jose Ignacio Perez, who was the last Spanish Governor of Texas. The protected native woodlands on Hanford-Southport's property date back to the time, when Governor Perez owned and occupied the property as the Spanish Governor.

3.57    The tree preserve areas of the property including the 14.42 acre easement are uniquely suitable as permanent landscape improvements for the proposed development of a hotel and conference center and office park.

3.58    The 2010 Tree Ordinance No. 2010-05-06-0376, which was in effect at the time of the approval of the tree permit/variance, provides special consideration for historic trees.

3.59    In order to protect historic trees, as defined in the 2010 Tree Ordinance, the City Arborist shall defer the approval of tree preservation plans to review by the historic preservation officer, who shall seek the advice of the historic design and review commission in instances where a historic tree is proposed to be removed.

3.60    As a proximate result of the Defendants' wrongful actions under "color of state law" in the past, described above, the owner was arbitrarily and unreasonably deprived of its rights to due

process and the opportunity to protect its property rights.  Hanford-Southport alleges and would prove that such deprivation of constitutionally protected rights including procedural and substantive due process under the fourteenth amendment and unlawful seizure of protected trees without a warrant or valid tree removal permit under the fourth amendment caused irreparable harm and injury.

3.61    As a proximate result of the Defendants' wrongful actions under "color of state law" in the past and wrongful actions, which are reasonably expected to occur in the immediate future, given the fact that SAWS already has commenced unlawful tree removal in preparation for pipeline construction on the subject property, the owner has been and will continue to be arbitrarily and unreasonably deprived of the enhancement value and/or intrinsic value of significant, historic and heritage trees within the easement area on its property.

3.62    Plaintiff alleges and would prove that SAWS and Pipelayers have used and intend to continue using mechanized equipment including tractors, track loaders, bulldozers, excavators, graders, and trucks to permanently remove and unnecessarily destroy all trees except one and all other vegetation from within the easement area.

3.63    Hanford-Southport alleges and would prove that Defendant Pipelayers, Inc. already has begun land clearing activities including unnecessary and unlawful destruction of all trees and understory plants on a 100' by 200' area of the pipeline easement at the east side of the subject property. Hanford-Southport alleges and would prove that the fair market value of this 20,000 s.f. of woodland trees and understory plants was about $145,000 according to expert evidence from an arborist, who prepared a botanical report and appraisal of native plants in that area of the subject property.

3.64    Such unnecessary destruction of protected trees and understory plants was negligent or grossly negligent because Pipelayers used mechanized equipment including a bulldozer or trackloader, which it reasonably knew or should have known was not designed or used to preserve trees and understory plants for subsequent transplanting. Furthermore, Pipelayers' decision to use a bulldozer or track loader to remove trees was negligent or grossly negligent because it reasonably knew or should have known that use of such equipment would necessarily result in destruction of protected trees.

3.65    Hanford-Southport alleges and would prove that Pipelayers, COSA, and SAWS cannot claim bona fide error for unlawfully removing or negligently destroying protected trees without a valid tree removal permit because the undersigned attorney filed a Notice of Claim and notified these Defendants in writing that SAWS' tree permit for the MRSO project was invalid months before Pipelayers started land clearing activities on the subject property.  Pipelayers had an adequate opportunity to verify information that SAWS' tree removal permit was invalid because SAWS' Project Manager O'Connor and Project Engineer Moczygemba both testified as to their respective false and misleading statements of material fact in the Tree Affidavit/Permit Application and Administrative Variance Request at the pipeline easement condemnation trial in Cause No. 2010-ED-0008 in March-April 2011, and they could have provided that information to Pipelayers if asked.

3.66    Hanford-Southport submits that COSA, SAWS, O'Connor, Moczygemba and Pape-Dawson all participated in the condemnation trial in Cause No. 2010-ED-0008 in March-April 2011, when the preponderance of admissible evidence admitted at trial showed that it is not necessary to permanently remove all trees from within the easement area. Therefore, these

Defendants cannot claim bona fide error when protected trees are unnecessarily removed or negligently destroyed within the pipeline easement area on the subject property.

3.67    Additionally and alternatively, Hanford-Southport alleges and would prove that COSA, SAWS and Pipelayers have actual or constructive notice that a police report was filed with the San Antonio Police Department, Report No. SAPD-2011-1051445, complaining of unlawful tree removal in violation of the City Tree Preservation Ordinance regarding destruction of 20,000 s.f. of protected trees and understory plants on or about October 1, 2011. So, Defendants cannot claim bona fide error regarding tree removal activities on the subject property after October 1, 2011 or before a valid tree removal permit is obtained.

3.68    Therefore, Hanford-Southport submits that its claims against unlawful seizure of property under the fourth amendment are ripe for adjudication because Pipelayers already has commenced unnecessary destruction of healthy trees on the subject property without a valid tree removal permit, warrant or other judicial order.

3.69    Hanford-Southport alleges and would prove that permanent destruction of 5.9 acres of the historic native tree preserve on its property would cause irreparable harm and injury due to the permanent loss of the unique character of historic trees, as well as the scenic beauty, age and healthy condition of the native heritage trees and understory plants, which cannot be adequately compensated by money damages alone.

3.70    Hanford-Southport alleges and would prove that the varieties, ages and sizes of heritage trees within the easement area on the subject property are commercially available from local tree nurseries, but they are not readily available in the quantities and sizes of trees and understory

plants required to restore the easement to its present condition. Furthermore, some of the historic and heritage trees on the subject property are estimated to be 200 years old, and such rare specimens are very hard to find and expensive to replace.

3.71    Hanford-Southport alleges and would prove that the most acceptable construction method for pipeline installation under historically significant sections of its protected tree preserve within the easement area would be boring or tunneling, which would not disturb the surface of the land or require extensive tree removal. This is an approved method of tree preservation, which is expressly approved in the City Tree Ordinance, as amended.

3.72    If open trenches are excavated for pipeline installation, Hanford-Southport alleges and would prove that it will be necessary to dig up the significant or heritage trees and other marketable trees and understory plants using professional tree service personnel, who are experienced in transplanting mature trees. This way, the significant and heritage trees within the easement area can be removed without damage or destruction and can be transplanted back onto the easement area after the pipeline is installed and the trench is backfilled.

3.73    Hanford-Southport alleges and would prove that this method of preserving the protected trees is an acceptable way to ensure that the site can be restored to a reasonable approximation of its present, historical condition. Otherwise, unless the heritage trees and other unique flora within the easement area are preserved for transplanting there would not be a sufficient quantity of commercially available heritage trees and other unique flora of the same varieties, quality and size as would be required to restore the site to its present historical condition.

3.74    Hanford-Southport further alleges and would prove that both methods of site preservation and/or restoration are both technically and financially feasible within the project budget. Furthermore, both methods of tree preservation and/or mitigation are approved under the 2010 City tree preservation ordinance.

3.75    Hanford-Southport alleges and would prove that imminent permanent destruction of 5.9 acres of historically significant native woodlands including 500 heritage trees, which are part of the owner's 26.4 acre on-site tree preserve, would be against the public interest because unnecessary permanent deforestation deprives the public of all the benefits that the City of San Antonio 2010 Tree Preservation Ordinance, was legislated to protect.

3.76    Hanford-Southport alleges and would prove that it is entitled to the relief demanded including adequate compensation for the recent unnecessary destruction of 100' by 200' wooded area including protected trees and understory plants on the east end of the easement, which occurred after this case was filed in state district court. Hanford-Southport also claims adequate compensation for the imminent damage to marketable trees adjacent to the easement and unnecessary destruction or loss of the remaining 10.4 acres of protected woodlands.

3.77    Hanford-Southport submits that it is also entitled to temporary and permanent injunctive relief that restrains SAWS and Pipelayers from unlawful or unnecessary seizure of private property without adequate compensation caused by land clearing and excavation activities that threaten to permanently destroy $3,559,370 worth of protected historic and heritage trees and understory plants within the easement area on its property.

3.78   Hanford-Southport submits that it has no adequate remedy at law because money damages alone will not adequately compensate it for the infringement or deprivation of its constitutional rights to due process under the fourteenth amendment and unlawful seizure of property under the fourth amendment. Likewise, money damages alone would not adequately compensate the owner for unnecessary permanent loss and destruction of 5.9 acres of historically significant heritage trees within the on-site tree preserve on its property.

3.79   Hanford-Southport submits that even though the City of San Antonio has condemned the 14.42 acres easement for the use and benefit of SAWS including the right to permanently remove all trees from within the easement area, the easement rights alone do not authorize permanent tree removal or unnecessary destruction of healthy, protected trees without adequate compensation and compliance with the 2010 City tree preservation ordinance as well as the fourth and fourteenth amendments.

3.80   Hanford-Southport alleges and would prove the following facts: the City Tree Protection Ordinance No. 2010-05-06-0376 was in effect at the time of the taking; the tree ordinance provides special consideration for historic trees; it is not necessary to permanently remove all trees from the pipeline easement on the subject property; SAWS' tree permit and variance applications for the Medina River Sewer Outfall (MRSO) pipeline project contained false or misleading statements of material fact, which show that the project tree permit and variance were improperly granted; permanent removal of all trees from within the easement area would be in violation of the City Tree Ordinance; SAWS' application for a variance did not meet the express requirements of the 2010 City Tree Ordinance in effect at the time of the granting of the variance; SAWS' application for a variance failed to show that the variance would not be contrary to the

public interest; and SAWS' application for a variance failed to show that the variance would be in harmony with the spirit and purpose of the tree ordinance.

3.81    To date, Hanford-Southport has not received any compensation for the loss or destruction of $3,559,370 worth of marketable trees within the easement area on its property, although some of its trees and understory plants already have been destroyed, and the rest of its valuable trees and understory plants within the easement area on its property will be destroyed imminently without necessity and without a valid tree permit and variance under the Tree Ordinance unless preliminarily enjoined.

3.82    Hanford-Southport submits that it appealed the condemnation award, and it is appealing the judgment in the condemnation case, but it is uncertain whether such appeal will result in an award of adequate compensation including payment for unnecessary loss or destruction of significant and heritage trees and understory plants attached to its land. Therefore, Hanford-Southport avers that a claim for just compensation under the fifth amendment is not ripe.

3.83    Hanford-Southport further submits that regardless of the fact that the City condemned easement rights including the right to permanently remove all trees within the easement area across the subject property, the landowner still has a right to be compensated for the unnecessary permanent removal of healthy trees from the easement under state law. In addition, even if the City and SAWS have a right to remove trees, they still have a mandatory duty to maximize tree preservation and otherwise comply with the City Tree Preservation Ordinance, as amended.

3.84    Hanford-Southport alleges and would prove that the imminent destruction of all the protected trees and understory plants within the 14.42 acre easement across its property would

render a judgment in this case ineffectual to the extent that the irreparable harm and injury would not be adequately compensable.

3.85    Hanford-Southport alleges and would prove that an injunction is necessary in order to preserve the subject matter of this suit until the case is resolved by a judgment.

3.86    Hanford-Southport alleges and would prove that it may be entitled to a preliminary and permanent injunction under the principles of equity and the laws of the United States and the State of Texas relating to injunctions because it is defending its property against unlawful seizure and imminent, unlawful, and unnecessary destruction of protected trees on its property under "color of state law" without due process under the fourteenth amendment. Hanford-Southport also claims unlawful seizure under the fourth amendment.

3.87    Hanford-Southport alleges and would prove that it is prepared to post a reasonable bond, if required, but that the Court should waive the bond requirement or set the bond at a nominal amount, because the request for temporary and permanent injunction is necessary in order to preserve the public interest in protecting constitutional civil rights and protecting historically significant heritage trees within a tree preserve within the city limits of the City of San Antonio under the City Tree Preservation Ordinance.

3.88    Hanford-Southport further alleges and would prove that its application for a preliminary and permanent injunction is also required to promote the enforcement and to prevent significant violations of the 2010 City of San Antonio Tree Preservation Ordinance.

3.89    As a proximate result of Defendants' acts and/or omissions complained of herein, Hanford-Southport has been required to obtain the legal services of the undersigned attorney and

has incurred costs of Court and legal expenses to protect its federally recognized rights pursuant to 42 U.S.C., Section 1983, for which it claims an award of court costs including reasonable and necessary attorney's fees pursuant to t 42 U.S.C., Section 1988 and/or the Texas Civil Practice and Remedies Code, Chapter 37, and common law fraud.

3.90    Hanford-Southport further submits that it may be entitled to pre-judgment and post judgment interest according to law in order to adequately compensate it for loss of use of the money and lost investment opportunity cost that may be awarded in the final judgment in this case.  Therefore, Hanford-Southport claims an award of pre-judgment and post judgment interest according to law.

3.91    Hanford-Southport respectfully submits that exemplary or punitive damages may be appropriate as necessary to punish the individual defendants or make an example of them in order to deter such egregiously wrongful or fraudulent conduct. Hanford-Southport is claiming exemplary or punitive damages against the individual Defendants for violations of its right to due process, its right to be free from unlawful seizure of private property and its fraud claims.

3.92    Hanford-Southport submits that the Defendant Patrick O'Connor cannot show that he may be entitled to official or qualified immunity in his individual capacity because his actions falsifying material information on the Tree Affidavit/Permit Application violated clearly established law in this circuit.  Furthermore, O'Connor's official decision to apply for the MRSO Tree Permit and Variance as the Owner without notice to affected landowners including Hanford-Southport denied due process under the fourteenth amendment and freedom from warrantless seizure of real property under the fourth amendment, which are clearly established in this Circuit.

3.93    Hanford-Southport submits that the Defendants Brice Moczygemba, P.E. and Pape-Dawson Engineers, Inc. cannot show that they may be entitled to qualified immunity in their individual capacities because their actions drafting false and misleading statements of material facts in the Tree Affidavit/Permit Application and providing false and/or materially misleading information on the Administrative Exception/Variance Request Application and Review letter violated clearly established law in this Circuit.

3.94    Hanford-Southport submits that the Defendant Pipelayers, Inc. cannot show that it may be entitled to qualified immunity in its individual capacity because its actions destroying 100' by 200' of protected woodlands including all trees and understory plants on the east end of the pipeline easement without a valid tree permit violated clearly established law in this circuit.

3.95    Hanford-Southport submits that unlawful or wrongful removal and/or destruction of each protected tree within the easement area on the subject property constitutes a  separate  offense

or injury under the San Antonio Tree Preservation Ordinance, as amended in May, 2010.

## IV.  CAUSES OF ACTION

4.1    <u>Declaratory Judgment</u>.      Plaintiff is seeking declaratory relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Texas Declaratory Judgment Act. Plaintiff requests a declaration of its rights, status and other legal relations between itself, its property and the City of San Antonio and SAWS with regard to the SAWS' tree removal permit and variance for the Medina River Sewer Outfall ("MRSO") project and the San Antonio Tree Preservation Ordinance including the 2006 and 2010 tree preservation ordinances, as applied.

4.2    Plaintiff alleges and would prove that the SAWS tree permit and variance for the MRSO project is void and unenforceable as to any right to remove protected trees on Plaintiff's property

because Plaintiff was a necessary party but was excluded from the administrative proceeding. Defendant O'Connor applied for a tree permit and variance as owner, thereby precluding notice to affected landowners including Plaintiff and an opportunity to participate in an adversary proceeding to dispute the permit and variance requests and protect their property rights and interests. Plaintiff did not waive its rights. The Tree Affidavit/Permit Application and variance application for the (MRSO) pipeline project contained false or misleading statements of facts, which show that the project tree permit and variance were arbitrarily and capriciously granted.

4.3     Furthermore, Plaintiff submits that the City Tree Preservation Ordinance as it was applied according to the course of conduct alleged under the facts and circumstances of this case was unconstitutional because it failed to provide procedural and substantive due process to the landowners affected by the MRSO sewer project pursuant to the fourteenth amendment, and it failed to protect landowners from warrantless seizure of real property affecting property rights and interests without adequate compensation pursuant to the fourth amendment. To wit, the course of conduct was inherently flawed, arbitrary and capricious, where the City Arborist made final decisions to grant a tree removal permit and variance affecting 85 tracts of land on the basis of O'Connor's applications as agent/owner and Owner without notice to affected landowners, who were denied an opportunity to dispute the granting of the permit and variance and were denied an adversary judicial forum to prevent warrantless seizure of real property or damage to their real estate without adequate compensation.

4.4     Therefore, Plaintiff submits that there is a justiciable controversy as to the constitutionality of the 2006 and 2010 Tree Ordinances, as applied, and the rights and status of the parties, and the declaration will resolve the controversy. To wit, the facts that the City has approved a tree permit and variance to permanently remove virtually all protected historic, significant and heritage trees

from the 14.42 acre easement on Plaintiff's property, and SAWS and Pipelayers have commenced land clearing, which will proceed imminently unless enjoined, demonstrate the reasonable likelihood that $3,559,370 worth of protected trees and understory plants on Plaintiff's property will be destroyed. Therefore, Plaintiff's claim for declaratory judgment is ripe.

4.5    Plaintiff submits that the district court has jurisdiction to make a declaration of its rights and status under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Texas Civil Practice and Remedies Code, Chapter 37, and the City tree preservation ordinance regarding the SAWS MRSO tree permit and variance, and the constitutionality of the 2006 and 2010 Tree Ordinances as applied.

4.6    Plaintiff is not seeking monetary damages or injunctive relief in regard to its request for declaratory judgment relief.

4.7    Plaintiff is seeking an award of costs of court including reasonable and necessary attorney's fees in relation to its request for a declaratory judgment pursuant to the Texas Declaratory Judgment Act; the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and 42 U.S.C. Section 1988.

4.8    <u>Unlawful Seizure of Real Property</u>.  Plaintiff is suing for an award of nominal and/or actual damages against the Defendants, acting "under color of state law" pursuant to an official policy, practice, custom or decision, for violations of rights, privileges and immunity under the fourth amendment to the United States Constitution.  The alleged warrantless seizure and imminent destruction of $3,559,370 worth of protected woodlands within the easement area on Plaintiff's property without compensation for this loss rises to constitutional importance under the facts and circumstances of this case. Therefore, Plaintiff's claims are actionable under 42 U.S.C., Section 1983.  In support of its claims the Plaintiff alleges and will prove each of the following by a preponderance of the evidence:

a.  Defendants intentionally, arbitrarily or recklessly committed acts that violated one or more of Plaintiff's clearly established federal constitutional or statutory rights;

b.  In so doing, Defendants acted under color of state law;

c.  Defendants are acting pursuant to an official policy, practice, custom or decisions of the City of San Antonio, Texas, and SAWS, to wit, COSA and SAWS are acting under "color of authority" of the 2006 San Antonio Tree Preservation Ordinance and Tree Permit/Variance for the MRSO project AP# 1589181;

d.  Defendants' actions include warrantless seizure of real property including imminent, unnecessary destruction of $3,559,370 worth of protected woodlands on Plaintiff's property including 500 heritage trees without lawful authority and without adequate compensation; and

e.  Defendants' actions under color of State law and the official policy, practice, custom or decisions of the City of San Antonio, Texas and SAWS were the legal causes of Plaintiff's injuries and damages.

4.9     Plaintiff claims an award of costs of court including reasonable and necessary attorney's fees pursuant to 42 U.S.C., Section 1988 regarding its claim for nominal and/or actual damages and injunctive relief for violation of its rights and freedom from warrantless seizure of property under the fourth amendment.

4.10    Denial of Due Process. Plaintiff claims that Defendants, while acting "under color of state law", intentionally or recklessly violated its clearly established federal constitutional rights under the Fourteenth Amendment including the rights, privileges and immunity against wrongful or illegal deprivation of property without procedural and substantive due process under the law. The alleged imminent destruction of $3,559,370 worth of protected woodlands within the easement area

on Plaintiff's property without compensation for this loss rises to constitutional importance under the facts and circumstances of this case. Therefore, Plaintiff's claims are actionable under 42 U.S.C., Section 1983.

4.11    Plaintiff is suing for an award of nominal and/or actual damages against the Defendants, acting "under color of state law" pursuant to an official policy, practice, custom or decision, for violations of rights, privileges and immunity under the United States Constitution.  In support of its claims the Plaintiff alleges and will prove each of the following by a preponderance of the evidence:

   a.   Defendants intentionally, arbitrarily or recklessly committed acts that violated one or more of Plaintiff's clearly established federal constitutional or statutory rights;

   b.   In so doing, Defendants acted under color of state law;

   c.   Defendants are acting pursuant to an official policy, practice, custom or decisions of the City of San Antonio, Texas, and SAWS, to wit, the city and SAWS are acting under "color of authority" of the San Antonio Tree Preservation Ordinance and Tree Permit/Variance AP# 1589181;

   d.   Defendants' actions include imminent, unnecessary destruction $3,559,370 worth of protected woodlands on Plaintiff's property including 500 heritage trees without due process and without adequate compensation; and

   e.   Defendants' actions under color of State law and the official policy, practice, custom or decisions of the City of San Antonio, Texas and SAWS were the legal causes of Plaintiff's injuries and damages.

4.12    Plaintiff claims an award of costs of court including reasonable and necessary attorney's fees pursuant to 42 U.S.C., Section 1988 regarding its claim for nominal and/or actual damages and

injunctive relief for violation of its rights to procedural and substantive due process under the fourteenth amendment.

4.13    Tort Claims Act.        TEX. CIV. PRAC. & REM. CODE §§101, et seq. Section 101.021(1) of the Texas Tort Claims Act provides a limited waiver of immunity for property damage proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

> (1)    the property damage arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

> (2)    the employee would be personally liable to the claimant according to Texas Law.

4.14    A governmental entity does not retain immunity for the negligent implementation of a discretionary decision. Once a plaintiff establishes a waiver of immunity under Section 101.021, he can invoke a claim of negligent implementation.  Plaintiff alleges and would prove that the City and SAWS waived immunity under the Texas Tort Claims Act, when it directed its employee, contractor or agent to damage or destroy protected trees on Plaintiff's property without first obtaining a valid tree permit and complying with Plaintiff's federally protected right to due process and freedom from warrantless seizure.  Therefore, COSA and SAWS officials and Pipelayers failed or refused to follow mandatory, non-discretionary procedures required to obtain a valid tree permit prior to implementing land clearing and tree removal activities.

4.15    Plaintiff further alleges that COSA and SAWS, it's agents, employees or contractors would be negligent in the implementation of the decision for land clearing and tree removal activities on Plaintiff's property if they damage and destroy property without legal authority,

without necessity, and by using mechanized equipment that was not designed and operated to maximize tree preservation. Plaintiff claims a legal and equitable right to be paid for the loss of trees on its property, and it has not waived the right to adequate compensation.

4.16      The City and SAWS condemned a pipeline easement including the right to permanently remove trees, but not fee title to the land.   However, COSA and SAWS did not pay any compensation for removing Plaintiff's valuable trees and understory plants. Therefore, Plaintiff still retains an equitable interest in the preservation of protected trees on its property, and COSA and SAWS have a duty to preserve the value of the trees until and unless they pay fair compensation.

4.17      The City tree preservation ordinance, as amended in May, 2010, mandates that City agencies and departments including SAWS shall maximize tree preservation. Therefore, any land clearing and tree removal that negligently removes, damages, and/or destroys protected trees on Plaintiff's property without a valid tree permit and without following procedures to avoid unnecessary waste, damage, and destruction of protected trees on Plaintiff's property would violate the City tree preservation ordinance. To wit, using a tractor, track loader or bulldozer to remove protected trees instead of a tree spade or professional hand digging tree removal methods for transplanting would be negligent.

4.18      The relevant portion of the Act provides for waiver if two elements are satisfied: 1) the negligence of an employee acting within the scope of his or her employment proximately causes damages; and 2) the damages arise from the use or operation of the motor-driven equipment. TEX.CIV.PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). Plaintiff alleges and would prove that the prospective damages in this case "arise" from the use of motor-driven equipment.

4.19      Plaintiff alleges and would prove that the City, it's agents, contractors and employees

would be personally liable to Plaintiff under Texas law for the decision and action to remove and destroy valuable trees on Plaintiff's property, under the facts and circumstances of this case. Plaintiff further submits that the unlawful removal or destruction of each protected tree constitutes a separate offense or violation according to the City of San Antonio Tree Preservation Ordinance, as amended in May, 2010. Therefore, the separate violations of the Tree Ordinance may be considered as potentially separate causes of action under the Texas Tort Claims Act for the purpose of establishing limitations on monetary damages and recovery.

4.20    Plaintiff alleges and would prove that the city, it's agents and employees were negligent in the investigation of the facts and circumstances leading to the decision for granting the tree permit and variance. Plaintiff also alleges and would prove that COSA and SAWS, their agents, contractors and/or employees have been negligent in the past and would be negligent in the immediate future in implementing land clearing and tree removal, damage or destruction on the subject property because the tree permit and variance are invalid as applied to Plaintiff's property, under the facts and circumstances of this case. Plaintiff further alleges that the city and SAWS, their agents, contractors and/or employees have been negligent in the past and would be negligent in the immediate future in the execution of the decision for tree removal because the method of clearing the land with tractors, track loaders, bulldozers, excavators, and graders would cause unnecessary destruction of valuable  property, which otherwise could be salvaged and transplanted back onto the easement after construction. Plaintiff submits that transplanting trees back onto the easement utilizing the proper designed and operated mechanized equipment would be an acceptable method of mitigation under the 2010 City tree preservation ordinance.

4.21    The Unified Development Code of the City of San Antonio – Section 35-493(a)(1) - Violations of Tree Preservation Standards provides that the wrongful removal of each significant

or heritage tree is a separate violation.  Therefore, Plaintiff claims an award of monetary damages pursuant to the Texas Tort Claims Act as a separate claim for wrongful removal and destruction of each significant, historic or heritage tree pursuant to the City tree ordinance. Section 35-493(a)(2) provides a civil penalty of up to $1,000 for each violation.

4.22     The Unified Development Code of the City of San Antonio – Section 35-491 – Civil Enforcement provides in paragraph (a) "The city or any proper person may institute civil actions or proceedings to prevent violations or threatened violations of these regulations…" Therefore, Plaintiff submits that the Unified Development Code of the City of San Antonio shows that a private contractor would be liable for damages, which implies that COSA and SAWS would be liable for the same damages under the Texas Tort Claims Act.

4.23     Common law fraud.  To establish a common law fraud cause of action, a plaintiff must prove (1) a material representation was made, (2) which was false, (3) which was either known to be false when made or which was recklessly made as a positive assertion without knowledge of its truth, (4) which the speaker made with intent that it be acted upon, and (5) the other party took action in reliance upon the misrepresentation, and (6) thereby suffered injury.

4.24     Plaintiff would prove all the prerequisites to a common law fraud claim based on the facts alleges above, to wit (1) Defendants O'Connor, Moczygemba and Pape-Dawson submitted a tree affidavit/permit application and variance request containing statements, (2) that were false and misleading, (3) which were either known to be false when made or which were recklessly made as a positive assertion without knowledge of the truth, (4) which the writer made with intent that it be acted upon, and (5) the City Arborist granted the permit and variance in reliance on the misrepresentations, and (6) the Plaintiff and the public suffered injury.

4.25     Plaintiff asserts its common law fraud claim against Defendant O'Connor in his

individual capacity, but not in his official capacity, and Defendants Moczygemba and Pape-Dawson. Plaintiff does not assert a common law fraud claim against the City of San Antonio or SAWS.

4.26    Plaintiff claims an award of actual damages, exemplary or punitive damages and costs of court including reasonable and necessary attorney's fees pursuant to its claim of common law fraud against the individual Defendants O'Connor, Moczygemba and Pape-Dawson.

V  DAMAGES

5.1    Plaintiff incorporates the averments set forth above as if set forth verbatim for all purposes. Plaintiff alleges and would prove that it suffered nominal and/or substantial monetary damages as well as irreparable harm and injury as a result of Defendants' wrongful, tortious, unlawful, fraudulent and/or negligent acts or omissions in the past. Plaintiff also alleges and would prove that it will suffer substantial monetary damages as well as irreparable harm and injury in the foreseeable future as a result of Defendants' imminent land clearing and tree removal activities, unless enjoined.

5.2    Plaintiff does not claim any monetary damages pursuant to its request for declaratory relief.

5.3    Plaintiff claims nominal damages for violations of its constitutional rights including denial of due process under the fourteenth amendment and warrantless seizure of real property under the fourth amendment.

5.4    Additionally and alternatively, Plaintiff claims substantial monetary damages pursuant to its fourth amendment wrongful seizure and Texas Tort Claim Act claims. Plaintiff alleges and would prove that it will suffer property damages proximately caused by the wrongful tree removal and destruction actions by Defendants COSA, SAWS and Pipelayers. Plaintiff

alleges and would prove that the City, SAWS and Pipelayers will imminently cause the wrongful, unlawful and unnecessary destruction of $3,559,370 worth of significant and heritage trees and understory plants on its property unless enjoined. Plaintiff's estimate of its monetary damages is based on the replacement cost of 10.4 acres of protected trees including 5.9 acres out of a 26.4 acre on-site tree preserve as well as 4.5 acres of marketable trees and understory plants. Plaintiff's estimate of damages is also based on evidence that site restoration including professional removal and transplanting of 500 heritage trees will cost $2.5 million.

5.5    Plaintiff also claims actual and exemplary damages against Defendants O'Connor, Moczygemba and Dawson for fraud.

5.6    Plaintiff claims a right to recover money damages from Defendants under the above listed theories of recovery.

5.7    Plaintiff also claims an award of pre-judgment and post-judgment interest according to law.

## VI.  INJUNCTIVE RELIEF

6.1    Plaintiff repeats and incorporates herein the factual allegations stated hereinabove as if fully set out and repeated at length.

6.2    Plaintiff submits that a preliminary injunction is necessary to preserve the status quo pending a trial on the merits and a permanent injunction. Plaintiff submits that deprivation of federally protected civil rights including denial of procedural and substantive due process under the fourteenth amendment and warrantless seizure of real property under the fourth amendment already have occurred. Wrongful tree removal and destruction has already commenced with the clearing of 100' by 200' of protected woodlands at the east end of the pipeline easement on Plaintiff's property.

6.3    Plaintiff alleges and would prove that the wrongful granting of a tree permit based on false

and misleading information authorizing tree removal, damage and destruction on Plaintiff's property without timely notice and an opportunity to appear and participate in the administrative process, denied him due process under the law. If Plaintiff had received timely notice regarding the SAWS MRSO tree permit and variance applications, it would have appeared and offered evidence and argument in the administrative proceedings that compliance with the 2010 City tree preservation ordinance requires SAWS to maximize tree preservation. Maximizing tree preservation on Plaintiff's land could include re-aligning the pipeline and/or boring and tunneling to avoid unnecessary removal of historically significant heritage trees on Plaintiff's property.

6.4    Maximizing tree preservation could also include transplanting significant and heritage trees back onto the easement on Plaintiff's property, where open trenching methods of pipeline installation may be required. Maximizing preservation of 4.5 acres of surplus trees would include professional removal of significant and heritage trees so they could be transplanted onto City property or returned to the landowner for transplanting or sale.

6.5    Plaintiff also alleges and would prove that arbitrary, unreasonable, and unnecessary removal and destruction of $3,559,370 worth of protected trees on its property would cause irreparable harm and injury because the varieties of the protected trees are not available commercially in the quantities that exist on the subject property and it takes a hundred years or more to grow many of the 500 protected trees that would be destroyed without an injunction.

6.6    Additionally and alternatively, Plaintiff respectfully submits that SAWS applied for a single tree permit and variance, which affected more than 85 parcels of privately owned land, without notifying the individual landowners. Most of the significant and heritage trees within the proposed easement existed on two large tracts including the Toyota property and the subject property within the city limits, but there are numerous other privately owned tracts with protected

trees that are affected by the permit and variance. Therefore, alleged civil rights violations under the facts and circumstances of this case are likely to arise in the future if not permanently enjoined.

6.7     Plaintiff submits that its application for injunctive relief is supported by affidavits based on personal knowledge and by a verified motion for preliminary injunction.

6.8     Therefore, Plaintiff requests a preliminary and permanent injunction enjoining Defendants from removing, damaging and/or destroying protected trees on Plaintiff's property without a valid tree permit pursuant to the City's 2010 tree preservation ordinance and without compliance with the fourth and fourteenth amendments.

6.9     Additionally, Plaintiff requests an order mandating that Defendants to utilize professional tree service contractors and personnel to ensure that any and all protected trees that may be removed from Plaintiff's property will be preserved so they can be transplanted back onto the easement or transplanted onto city property after payment of adequate consideration.

6.10    Plaintiff requests a mandatory injunction requiring Defendants to maximize tree preservation according to the express terms of the San Antonio 2010 Tree Preservation Ordinance by preserving or restoring the easement as near as practical to its present condition including an abundance of the same healthy trees and understory plants that exist on the 5.9 acres designated by Plaintiff as his tree preserve. Plaintiff submits that the estimated cost for the site restoration expense is $2.5 million, which would not increase the approved overall project budget.

6.11    Alternatively, if Defendants are not required to restore the easement to its present condition, then Defendant SAWS should be required to properly remove all protected, historic or heritage trees and a sufficient quantity of understory plants within the easement area and deliver them in marketable condition to Plaintiff, indemnify Plaintiff for any loss of marketable trees and

understory plants, and pay Plaintiff $2.5 million so that it may be adequately compensated for the cost of site restoration.

6.12    Plaintiff submits that he should not be required to post bond for the requested injunctive relief. Alternatively, Plaintiff requests that any bond requirement be set at a nominal amount.

## VII.   JURY DEMAND

7.1        Plaintiff has paid the jury fee and demands a jury trial.

## PRAYER

WHEREFORE, premises considered, Plaintiff prays for an order that Defendants are not entitled to absolute or qualified immunity from suit in this case. Upon final hearing on the merits, Plaintiff prays that the Court will grant Plaintiff judgment as follows:

1)        Declaratory judgment that COSA, SAWS, O'Connor, Moczygemba, Pape-Dawson and Pipelayers denied Hanford-Southport's rights, privileges or immunity under the fourth amendment against warrantless seizure of real property without adequate compensation, when they engaged in a course of conduct to obtain a tree removal permit and variance affecting the subject property without notice to the landowner,  without affording an opportunity to dispute the permit and variance in an adversary forum, and without adequate compensation when they removed valuable trees from the easement area on the subject property.

2)        Declaratory judgment that COSA, SAWS, O'Connor, Moczygemba, and Pape-Dawson denied Hanford-Southport's rights, privileges or immunity under the fourteenth amendment against denial of procedural and substantive due process, when they engaged in a course of conduct asserting false and misleading statements of material fact to obtain a tree removal permit and variance affecting the subject property without notice to the landowner,  without affording an opportunity to dispute the permit and variance in an adversary forum, and without adequate

compensation when they removed valuable trees from the easement area on the subject property.

3)      Declaratory judgment that the City of San Antonio 2006 and 2010 Tree Ordinances are unconstitutional as applied to the subject property, under course of conduct and the facts and circumstances of this case, because the ordinances allowed O'Connor to obtain a tree removal permit and variance as the "Owner" without notice to affected persons including Hanford-Southport, whose interests in real property were at issue, and without affording them due process under the fourteenth amendment, and freedom from warrantless seizure of real property including unnecessary tree removal without adequate compensation under the fourth amendment.

4)      Declaratory judgment that the SAWS MRSO tree permit/variance is null and void as to the subject property because it was granted arbitrarily and capriciously on the basis of false and misleading statements of material fact without notice to affected persons, whose interests in real property were at issue, and without affording them due process under the fourteenth amendment and freedom from warrantless seizure of real property without adequate compensation for unnecessary destruction of valuable trees under the fourth amendment.

5)      Preliminary and permanent injunction against unconstitutional denial of procedural and substantive due process under the fourteenth amendment, unlawful seizure of real property without judicial process and without adequate compensation under the fourth amendment, and unnecessary removal, damage and/or destruction of protected trees by Defendants SAWS and Pipelayers on the subject property without compliance with the 2010 City Tree Ordinance.

6)      Mandatory injunction that Defendant SAWS adequately compensate Hanford-Southport for unnecessary removal of valuable trees from the subject property and obtain a valid tree permit pursuant to the San Antonio Tree Preservation Ordinance No. 2010-05-06-0376, prior to

commencing any tree removal actions on the subject property;

7)  awarding damages as follows:

    a.  nominal damages for violation of Plaintiff's federally protected rights under the fourth and fourteenth amendments;

    b.  actual damages in the amount of $145,000 against the City of San Antonio, SAWS, and Pipelayers, Inc. jointly and severally, for negligent destruction of 100' by 200' of protected woodlands at the east end of the easement on Plaintiff's property pursuant to 42 U.S.C., Section 1983 for violation of the fourth amendment, and under the Texas Tort Claims Act;

    c.  actual damages in the total amount of $3,559,370 against the City of San Antonio and SAWS jointly and severally for negligent and/or unnecessary destruction of trees on Plaintiff's property pursuant to 42 U.S.C., Section 1983 for violation of the fourth amendment, and under the Texas Tort Claims Act; and

    d.  actual damages against Defendant O'Connor, in his individual capacity, and Defendants Moczygemba and Pape-Dawson for fraud;

8)  assessing exemplary or punitive damages against Defendant O'Connor, in his individual capacity, and Defendants Moczygemba and Pape-Dawson for fraud;

9)  awarding pre-judgment and post judgment interest according to law,

10)  awarding Plaintiff its costs of Court including reasonable and necessary attorney's fees pursuant to 42 U.S.C., Section 1988, the federal Declaratory Judgment Act, Texas Declaratory Judgment Act, Tex.Civ.Prac.&Rem. Code, Chapter 37, and/or common law fraud.

10)  awarding a prospective award of reasonable and necessary attorney's fees in the event of appeals of this case including $20,000 for each appeal to the Fifth Circuit Court of Appeals and

$25,000 for application for writ of error to the United States Supreme Court under the Texas

Declaratory Judgment Act and/or 42 U.S.C., Section 1988; and

11)       ordering such other relief, at law or in equity, to which Plaintiff may be justly

entitled.

                              Respectfully submitted,

                              Philip M. Ross
                              1006 Holbrook Road
                              San Antonio, TX 78218
                              Phone: 210/326-2100
                              Email: ross_law@hotmail.com
                       By:    /s/ Philip M. Ross
                              Philip M. Ross
                              State Bar No. 17304200
                              Attorney for Plaintiff Hanford-Southport, LLC


### CERTIFICATE OF SERVICE

        I certify that this document was filed on March 7, 2012 via ECF and Notice has been
electronically mailed to:

Charles W. Shipman         shipmanc@haynesboone.com,   scarpuld@haynesboone.com,
terry.grimmett@haynesboone.com

Deborah Lynne Klein        Deborah.Klein@sanantonio.gov,  Janet.Daugherty@sanantonio.gov,
William.Wuerzberger@sanantonio.gov

Francisco Javier Garza    fgarza@davidsontroilo.com, dmgarcia@davidsontroilo.com

R. Gaines Griffin      ggriffin@davidsontroilo.com, dmgarcia@davidsontroilo.com

Stephen P. Allison         stephen.allison@haynesboone.com,  penny.holton@haynesboone.com,
terry.grimmett@haynesboone.com

William W. Sommers     wws@tglf.com, mdg@tglf.com, rma@tglf.com

                                        /s/ Philip M. Ross
                                        Philip M. Ross